interest purchased, subject to all the defenses, legal and equitable, of the debtor who issued the security'—quoting Lord Thurlow in Davies v. Austin, 1 Ves. 247, that 'a purchaser of a chose in action must always abide by the case of the person from whom he buys.' This rule, as laid down in Bush v. Lathrop, supra, was said in Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 6 L. R. A. 475, 58 Am. Rep. 490, to stand in full force and unquestioned, except to the extent that, where the real owner had by the act of investing another with apparent ownership of the property estopped himself from disputing such title, the rule does not apply. * * * In the case in hand, so far from being guilty of any act which could be construed as an estoppel, the plaintiffs have shown the utmost diligence and energy in attacking the contract in question, and no one hereafter, whether a bondholder or other, will have good ground for complaining in this respect of anything that the plaintiffs have done or left undone. Unless the rule of Bush v. Lathrop is held applicable to such a case as is here presented, it is difficult to conceive a case to which it would apply. Where a going concern mortgages all its assets, including outstanding contracts, if the mortgagee or the owners of bonds secured by the mortgage should be held to have any greater or different rights than the concern itself upon such contracts, intolerable confusion and injustice would result."

With this disposition of the matter all parties to this suit have acquiesced. It is true the New York Security & Trust Company states in its brief:

"Without fault on its part, the trust company has been placed in a most embarrassing position."

That position is due to its act in certifying the bonds in the face of full information and timely warning. That in spite of said information and warning it decided to take the risk and make its certification, and may therefore be liable thereon, presents no question worthy of consideration in this case.

It seems to me that all we have to do is to decide the questions presented to us upon this appeal, and that upon those questions the judgment appealed from was right, and should be affirmed, with costs to the respondents.

---

KISSEL et al. v. ST. LOUIS & S. F. R. CO. et al.

(Supreme Court, Appellate Division, First Department. June 26, 1908.)

INJUNCTION—CORPORATIONS—SUITS BY MINORITY STOCKHOLDERS—TEMPORARY INJUNCTION.

The F. Railroad Company procured control of the C. Railroad Company by issuing to its stockholders trust certificates under an agreement to pay semiannual dividends and a specified sum per share at a designated future date. The stock was delivered to a trustee to secure performance of the agreement, which bound the F. Company not to permit the issue of any bonds or certificates of indebtedness by the C. Company, or the use of the proceeds thereof except for certain specified purposes, until the stock had been paid. Held, that in a suit by minority holders of trust certificates for an accounting of obligations issued by the C. Company in violation of the trust agreement, and requiring the F. Company to place in the treasury of the C. Company the equivalent in money of such obligations, etc., the court was authorized to issue a temporary injunction restraining the F. Company from issuing obligations in violation of the trust agreement and enjoining the sale of any such obligations, but could not restrain the C. Company from dividing its surplus as dividends declared on its stock and paying such dividends to the F. Company under the trust agreement.

Appeal from Special Term.

Action by Gustav E. Kissel and another against the St. Louis & San Francisco Railroad Company and others. From an order granting an injunction pendente lite, certain of the defendants appeal. Modified and affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Morgan J. O'Brien, for appellants.

Howard Taylor, for respondents.

INGRAHAM, J. The plaintiffs, as the owners of what are known as "common stock trust certificates," commenced this action, on behalf of themselves and all other holders of such certificates who desired to come in and be made plaintiffs, under an agreement, a copy of which is annexed to the complaint, between the St. Louis & San Francisco Railroad Company, a corporation organized under the laws of the state of Missouri, and the Colonial Trust Company, a corporation organized under the laws of the state of New York, which has subsequently been merged in the defendant the Trust Company of America, by which the Colonial Trust Company became the holder of certain shares of the stock of the defendant the Chicago & Eastern Illinois Railroad Company in trust to secure certain obligations of the San Francisco Company. The judgment demanded is to remove the Trust Company of America from its position as trustee under the said agreement; to revoke a proxy given by the Trust Company of America to the San Francisco Company to vote the stock of the Chicago Company; that an accounting be had as to the extent to which the Chicago Company had issued obligations or parted with assets improperly and in contravention of the trust agreement; requiring the defendant the San Francisco Company or the defendant Rock Island Company to place in the treasury of the Chicago Company to the credit of its capital account the equivalent in money of such obligations and assets; and that until such payment be made the defendants be enjoined from further selling, issuing, or in any manner disposing of any obligations of, parting with any trust assets of, or selling any of the preferred or common stock of, the Chicago Company, and from declaring any dividend on its common stock, and that plaintiffs have such other and further relief. Upon this complaint the court granted a temporary injunction restraining the defendants the San Francisco Railroad Company, the Rock Island Company, and the Chicago & Eastern Illinois Railroad Company from further selling, issuing, or in any manner disposing of, bonds or any other forms of obligation of the Chicago & Eastern Illinois Railroad Company, from further parting in any manner with any of the trust assets of the said Chicago Company, from further selling any of the preferred or common treasury stock of the said company, and from declaring or paying any dividends on its common stock or from permitting any of said things to be done.

The trust agreement, a copy of which is annexed to the complaint, is between the San Francisco Company, of the first part, and the Colonial Trust Company, of the second part. It recites that the San Fran-

cisco Company is about to purchase certain of the shares of capital stock of the Chicago Company at the price of $250 per share, and to issue for the purchase price thereof what are called "10 per cent. common stock trust certificates," by which the San Francisco Company agreed to pay the holders of the certificates the sum of $250 in respect of each share of said common stock of the Chicago Company purchased by it and transferred to the Colonial Trust Company as trustee under the trust agreement on the 1st day of July, 1942, and to secure the payment of these stock trust certificates the shares of stock of the Chicago Company purchased by the San Francisco Company are transferred to the Trust Company to be held by it in trust under the provisions of this agreement. The terms of this trust agreement are stated in the case of Kissel v. Chicago & Eastern Illinois Railroad Company (decided herewith) 111 N. Y. Supp. 937, and I there expressed my views in relation to the legal obligations imposed by this trust agreement upon the parties to it and the rights of the trustee and the holders of the trust stock certificates under it. If I am right in the views there expressed, it would follow that the plaintiffs cannot maintain this action and were not entitled to an injunction restraining the Chicago Company from issuing its obligations, duly authorized by its directors and stockholders, or from paying dividends upon stock out of its surplus earnings; and for the reasons therein stated the order granted in this case was improper, and it should be reversed, and the motion for an injunction denied. If, however, I am wrong in the construction given to this agreement, and if under the agreement the Chicago Company is prevented from issuing any obligations or transacting any of its business because of an agreement between stockholders of that corporation as to the method by which such shareholders should exercise their power as such, but to which the corporation itself is not a party, then it certainly seems to me that this injunction was much too broad, and that all that the court should have done under any circumstances was to enjoin the Chicago Company from issuing any obligations or making any contracts except those expressly authorized by this trust agreement.

An active corporation engaged in business is expressly authorized by law to divide its surplus earnings among its stockholders. This agreement contemplates such a division of the surplus earnings and expressly provides that all dividends paid on the stock before a default by the San Francisco Company in its obligations to the holders of the stock trust certificates shall be paid to the San Francisco Company. No such default is alleged; but it is not disputed but that the San Francisco Company has faithfully performed all of its obligations to the holders of the stock trust certificates. The power of the court to grant an injunction is regulated by sections 603, 604, of the Code of Civil Procedure. Section 603 authorizes an injunction "restraining the commission or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury to the plaintiff"; and section 604 authorizes an injunction where "it appears, by affidavit, that the defendant, during the pendency of the action, is doing, or procuring, or suffering, to be done, or threatens,

or is about to do or to procure, or suffer to be done, an act, in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual."

Assuming that the plaintiffs are right in their contention, and that these obligations issued by the Chicago Company, or some of them, were not expressly authorized under that trust agreement, and that under it the Chicago Company is without power to issue such obligations, then the extent to which an injunction should be granted is to prohibit the defendant corporation during the pendency of the action from issuing, selling, or disposing of any obligations of the Chicago Company, or from disposing of trust assets of the Chicago Company. I think there was no justification for an order restraining the Chicago Company from dividing its surplus as dividends thus declared upon the stock of the Chicago Company and paying such dividends to the San Francisco Company under the trust agreement. Under the trust agreement the San Francisco Company is required to pay interest on the stock trust certificates semiannually. There is no proof that the San Francisco Company has used for its own purposes any of the property or the proceeds of any of the obligations of the Chicago Company; and if the claim of the plaintiffs as to the effect of this trust agreement is correct, and under the trust agreement no securities can be issued by the Chicago Company except those expressly authorized by the trust agreement, then I think the court would have power to restrain the issue of any of the obligations of the Chicago Company not expressly provided for by the trust agreement, and so far as such securities have been authorized and are unissued, or so far as the Chicago Company contemplates the issuing of additional obligations not so authorized, the issue or disposition of such obligations could be enjoined pending the trial of the action; but it seems to me that that is the extent to which the court was authorized to enjoin the defendants.

I think, therefore, that the order appealed from should be reversed, and the motion for an injunction absolutely denied; but if, however, my associates should be of the opinion that the plaintiffs' construction of this trust agreement is correct, then the order should be modified so as to restrain the defendant corporation from issuing or disposing of bonds or other obligations of the Chicago & Eastern Illinois Railroad Company, or from further parting with any of the assets of said company, except such assets the sale of which is permitted by the trust agreement—nothing in the order to prevent the arranging for and making of ordinary renewals of obligations of the defendant the Chicago and Eastern Illinois Railroad Company outstanding nor prior to January 16, 1908, the renewal in any case to be for no greater sum than the amount of the former obligation.

McLAUGHLIN, J., concurs.

LAUGHLIN and HOUGHTON, JJ., concur in the modification of the injunction suggested in the opinion of Mr. Justice INGRAHAM, and that the order, as so modified, be affirmed, without costs.

SCOTT, J.   For the reasons stated somewhat at length in Kissel v. Chicago & Eastern Illinois Railroad Company (decided herewith) 111 N. Y. Supp. 937, I am in favor of the continuance of the injunction pendente lite in its main provisions.   The acts enjoined are all apparently, and I think actually, violative of the seventh article of the trust agreement executed by the St. Louis & San Francisco Railroad Company to the Colonial Trust Company for the benefit and security of the stock trust certificates issued to the former owners and vendors of the stock of the Chicago & Eastern Illinois Railroad Company.   I am, however, disposed to agree with Mr. Justice INGRAHAM that the injunction should be so far modified as to permit the declaration and payment of dividends upon the common stock of the Chicago Company, provided that the payment of such dividends be strictly limited to be made out of actual cash in the treasury of the company representing net earnings or accumulated surplus.   The defendants should not, however, be permitted to declare and pay a dividend out of what may be a mere bookkeeping surplus, and raise the actual cash to make such payments by the issue of permanent obligations of the Chicago Company.

With this modification, I am in favor of an affirmance of the injunction order.